# In the United States Court of Federal Claims

No. 03-2752 C

(Filed December 6, 2013)

```
* * * * * * * * * * * **    *
KEITH L. KELLER,            *
                            *
              Plaintiff,    *
                            *    Military Pay; Standard of Review for
      v.                    *    Decisions Issued by a Board for Correction
                            *    of Military Records.
THE UNITED STATES,          *
                            *
              Defendant.    *
                            *
* * * * * * * * * * * *      *
```

*David P. Sheldon*, Washington, DC, for plaintiff.

*Douglas K. Mickle*, United States Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Deborah A. Bynum*, Assistant Director, Washington, DC, for defendant. *Lt. Col. Linette Romer* and *Todi Carnes*, Air Force Legal Operations Agency Military Personnel Branch, Joint Base Andrews, MD, of counsel.

_____

**OPINION**

_____

**Bush**, *Senior Judge*.

This military pay case is before the court on defendant's motion to dismiss, under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), and on the parties' cross-motions for judgment on the administrative record, under RCFC 52.1(c). These motions have been fully briefed; oral argument was neither requested by the parties nor required by the court. For the

reasons stated below, defendant's motion to dismiss is granted, defendant's motion for judgment on the administrative record is granted, and plaintiff's motion for judgment on the administrative record is denied.

## BACKGROUND[1]

### I.    Performance Issues and Discharge

Plaintiff Keith L. Keller, M.D. was appointed to serve in the United States Air Force Reserve on December 8, 1995; was ordered to serve a forty-eight month period of active duty on December 14, 1995; and, on January 8, 1996, he "entered the United States Air Force as a commissioned officer with a field rank of major." Compl. ¶¶ 18-19. Dr. Keller was board certified in both Obstetrics/Gynecology and Family Practice, had been in private practice for twelve years, and was also a licensed pharmacist. *Id.* ¶ 19; AR at 278, 318. He was assigned to the 319th Medical Group at Grand Forks Air Force Base, North Dakota. Compl. ¶ 19. His principal duties upon assignment were in obstetrics/gynecology. AR at 20, 78.

Dr. Keller's early months of service at Grand Forks were not without dramatic incident. Various documents in the record present Dr. Keller's perspective on a number of events that occurred. For example, a martial arts injury impaired Dr. Keller's dominant hand, which affected his handwriting and his notations in medical charts. AR at 9, 21, 279. In addition, some observers complained of errors in his performance, such as incorrect use of forceps, inadvertent failure to remove sponges from patients, failure to observe universal precautions, and failure to comply with informed consent documentation. *Id.* at 333-34. Dr. Keller denied that some of these errors occurred, downplayed the

---

[1]/ The facts upon which the parties rely are undisputed as to procedural events in this lengthy pay dispute. Although certain background facts are interpreted quite differently by the parties, the court need not reconcile these competing interpretations of immaterial portions of the record. The finalized administrative record (AR) was filed in two installments:  the first installment, pages 1 through 650, although there was no page 640, was filed on July 9, 2009; the second installment, pages 641 through 721, was filed on July 16, 2012. Because there are ten record pages, numbered 641 through 650, which were submitted in each installment and which are not identical, these pages included in the second administrative record installment are cited by the court as AR at 641.2, 642.2, 643.2, etc. All references to the complaint (Compl.) in this opinion are to the second amended complaint filed October 1, 2012, unless otherwise noted.

significance of others, and noted that he was adjusting to required procedures. *Id.*
Dr. Keller also reported that his treatment decisions regarding a prominent officer's
wife led to retaliation by his superiors. *Id.* at 283-84.

An opposing viewpoint of Dr. Keller's performance emerges from various
documents in the record, such as the minutes of a meeting held September 9, 1996
whose purpose was to "discuss some deficiencies and questions of standard of care
on provider Maj[.] Keith L. Keller, OB/Gyn Physician." AR at 339.  Eventually,
Dr. Keller's performance came to be characterized by the Air Force as substandard.
*Id.* at 412-16.  By April 30, 1997, procedures for discharge for substandard
performance had been initiated.[2] *Id.* at 60.

Along with discharge procedures, there were two other personnel processes
of note that were also underway at about this time.  First, Dr. Keller's clinical
privileges were suspended and eventually revoked.  Second, he was considered, but
not selected, for promotion to lieutenant colonel.  A brief review of these personnel
processes provides some relevant background for Dr. Keller's current claims in this
suit.

As far as the revocation of clinical privileges is concerned, upon assignment
to Grand Forks Dr. Keller was temporarily restricted to supervised clinical
privileges.  AR at 72.  Once concerns about Dr. Keller's performance arose, his
clinical privileges were ordered to be held in abeyance pending investigation.  *Id.*
Eventually, Dr. Keller's superiors at Grand Forks denied him regular clinical
privileges and revoked his supervised clinical privileges.  *Id.*

Dr. Keller appealed the revocation of his clinical privileges; he lost on the
issue of regular clinical privileges but won on the issue of supervised clinical
privileges.  AR at 87.  His supervised clinical privileges were ordered to be
restored on October 9, 1997.  *Id.*  It does not appear, however, that the Air Force
was able to implement that order within the context of Dr. Keller's assignment at
Grand Forks and the supervisory options available there at that time.  *See id.* at 28
("My privileges were never restored."), 448-59.

---

[2]/ The details of these discharge procedures and of the actions taken by Dr. Keller in
response to these procedures are not relevant to current issues in this litigation.

Turning now to the topic of promotions, Dr. Keller was eligible to be considered for promotion to lieutenant colonel in 1996, but was not selected for promotion by the medical/dental selection board.  AR at 5.  Dr. Keller was also considered for promotion in 1997 but, again, was not selected for promotion to lieutenant colonel by the selection board.  *Id.*  Instead, Dr. Keller received an honorable discharge on November 26, 1997 for substandard performance.  *Id.* at 6; Compl. ¶ 20.

## II.     Dr. Keller's Challenge to His Discharge and Other Air Force Actions

### A.       Overview of Earlier Proceedings[3]

Dr. Keller has applied to the Air Force Board for Correction of Military Records (AFBCMR or Board) for relief related to his service with the Air Force at least three times.[4]  His first application was filed on or about October 15, 1999.  Pl.'s Mot. at 2-3; AR at 16-44.  The Board rendered a decision on that request for relief on October 18, 2001.  Pl.'s Mot. at 3; AR at 1-14.  Although Dr. Keller requested numerous forms of relief, the relief granted by the Board was significant but of fairly narrow scope:  the AFBCMR recommended and the Air Force "changed the underlying reason for discharge to 'involuntary release; non-selection, permanent promotion,' and constructively extended his date of separation [from November 26, 1997] to June 30, 1998."  Pl.'s Mot. at 3.

Dr. Keller then challenged the limited relief he obtained from the AFBCMR by filing his original complaint in this court on November 26, 2003, six years after his actual separation from the Air Force.  Plaintiff consented to the government's motion to remand his claims, which included an allegation that the Board improperly denied him the opportunity to be considered for promotion by a Special

---

[3]  The court restricts its recitation of facts in this section to the facts that are essential for an understanding of the current dispute in this litigation.  The court notes that the parties' dispositive motions provide a very limited discussion of the complexities of this pay dispute which has endured ten years.  The court has thoroughly examined the administrative record, however, and bases its decision on the entire record, not just those record portions specifically cited by the parties or cited in this opinion.

[4]  In addition to his three principal applications, there were other requests to the Board, such as a supplemental request for relief, AR at 179, 185, and a request for reconsideration, *id.* at 311.

4

Selection Board (SSB) for 1996, to the AFBCMR.[5]  Mot. to Remand of March 11, 2004; *see also* Orig. Compl. ¶¶ 52, 60.  The court granted the motion to remand and stayed this case to allow the parties adequate time for the remand to fulfill its purpose.

Pursuant to the remand from this court, Dr. Keller filed his second application for relief with the AFBCMR on April 30, 2004.  Pl.'s Mot. at 3; AR at 270-311.  The Board rendered a decision on this second application for relief on October 12, 2004.  Pl.'s Mot. at 3; AR at 602-14.  Although most of his requests for relief were rejected, the Board "offered Dr. Keller the chance to . . . be considered for promotion by two new SSBs for 1996 . . . and 1997 . . . .  Further, if Dr. Keller was not selected for promotion, he was to be considered for continuation by the . . . SSB [for 1997]."  Pl.'s Mot. at 4.

In 2005, the SSBs met but neither SSB selected Dr. Keller for promotion to lieutenant colonel.  Pl.'s Mot. at 4; AR at 623, 644.  However, the 1997 SSB selected Dr. Keller for continuation.  AR at 623, 644.  Selection for continuation appears to have presented Dr. Keller with three mutually exclusive choices: (1) submitting an application for continuation by reinstatement to active duty; (2) agreeing to continuation via constructive service for the purpose of being considered for promotion (and continuation) by subsequent SSBs; or, (3) abandoning continuation entirely, whether through active duty service or constructive service.  *See, e.g.*, *id.* at 615-16, 620-23, 629.

It is undisputed that Dr. Keller chose continuation through constructive service.  Pl.'s Mot. at 4; AR at 622.  In 2006, the AFBCMR directed the Air Force to conduct SSBs for 1998, 1999, and 2000, as well as to consider Dr. Keller for another three years of continuation at the 2000 SSB.  AR at 628-29, 637-39.  Dr. Keller was not selected for promotion at any of the SSBs convened for 1998, 1999 or 2000, and was not selected for continuation by the 2000 SSB.  Compl. ¶¶ 35, 37.

---

[5]/  In this opinion, the abbreviation SSB may reference a promotion board as well as a continuation board, the latter term referring to a board whose function is to determine whether an officer should have continued in service with the Air Force.  Each SSB functions as a board that considers whether or not the officer should have been promoted, or continued in service, at a particular point in time in the past.  Thus, for example, the "1997 SSB" considered Dr. Keller for promotion and also continuation based on his service records through 1997, even though the 1997 SSB was not convened until 2005.

In 2007, Dr. Keller was processed for separation based on these latest SSB results, with a finalized discharge date of July 31, 2001.  *Id.* ¶ 38; AR at 628-29; Def.'s Mot. at 6.

The court continued the stay of proceedings of the subject matter in 2007 so that the Air Force could complete the process of rendering financial relief to Dr. Keller based on his continuation of constructive service through July 31, 2001. Orders of January 19 and September 6, 2007.  In 2009, plaintiff reported that he had been paid "$160,388.68 less tax withholdings for the reconstructed period from November 27, 1997 through July 31, 2001."  Pl.'s Status Report of February 12, 2009 ¶ 10.  This status report also announced that plaintiff intended to file a first amended complaint, which was indeed filed on March 20, 2009.

On July 7, 2009, defendant responded to the first amended complaint with a combined motion to dismiss and motion for judgment on the administrative record. While briefing of these motions was underway, plaintiff filed his third application for relief to the AFBCMR, on or about December 21, 2009.  AR at 657-68.  The parties eventually agreed that another stay of proceedings was warranted to allow a final resolution of plaintiff's claims before the AFBCMR.  Order of June 7, 2010. That third and final decision of the AFBCMR, issued on April 10, 2012, concluded that

> after a lengthy and thorough consideration of the documentation, statements, and contentions presented throughout this more than ten-year debate regarding the applicant's discharge, we believe the applicant has been provided with full and fitting relief in the aftermath of his discharge and find no basis to recommend any relief beyond that previously rendered.

AR at 655.  The third decision of the AFBCMR, denying any and all additional relief to Dr. Keller, was filed in this court on July 16, 2012.

## B.    Plaintiff's Challenge to the Third AFBCMR Decision

Plaintiff's second amended complaint was filed on October 1, 2012.  There are five principal claims in the complaint.  First, plaintiff contends that the records

before the SSBs for 1998, 1999, and 2000 were not properly constructed, were not substantially complete, did not fairly portray Dr. Keller's service, and were inaccurate and misleading.  Compl. ¶ 47.  Second, plaintiff asserts that the wording of forms which explained gaps in Dr. Keller's record violated regulation and that this violation was not harmless.  *Id.* ¶ 48.  Third, plaintiff argues that the Officer Selection Briefs (OSBs) considered by the SSBs were unfair and prejudicial.  *Id.* ¶ 49.  Fourth, plaintiff states that the records considered by the SSBs contained Promotion Recommendation Forms (PRFs) that were "incomplete, inaccurate, and . . . [that these PRFs] were not prepared by authorized raters."  *Id.* ¶ 50.  Fifth, plaintiff complains that the composition of the SSBs "violated 10 U.S.C. § 612 [(2012)] and [Air Force Instruction] AFI 36-2501 para. 2.3.4 that prohibit officers from being members of two successive selection boards."  *Id.* ¶ 51.  Because the AFBCMR rejected all of these allegations of error, plaintiff argues that the Board's decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Id.* at 10.

Plaintiff's requests for relief in the complaint principally address promotions through the grade of general, reinstatement, back pay and attorney fees.  Specifically, Dr. Keller asks the court to:

> A.  Set aside the decisions of the AFBCMR;
> B.  Compel the Defendant to correct Plaintiff's record to reflect that he received promotions beginning with the grade of lieutenant colonel and continuing serially through the grade of general;
> C.  Compel the Defendant to correct Plaintiff's record to reflect that he was reinstated and credit Plaintiff with all back pay, special pay, and allowances equivalent to the grades appointed until his proper separation date;
> D.  Award Plaintiff attorney's fees and costs expended in pursuit of this claim, pursuant to the Equal Access to [J]ustice Act, 28 U.S.C. § 2412 [(2006)]; and
> E.  Grant any other relief that the Court deems just and proper.

Compl. at 12.

Defendant filed a combined motion to dismiss and motion for judgment on the administrative record on December 12, 2012, to which plaintiff responded with his own motion for judgment on the administrative record on May 2, 2013. Defendant's reply brief was filed on June 21, 2013.  Plaintiff's reply was filed on August 7, 2013.  The court reserves its discussion of the parties' legal arguments for the analysis section of this opinion.

## DISCUSSION

### I.    Standards of Review

#### A.    RCFC 12(b)(6)

When considering a motion to dismiss under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982).  The court must also determine whether the complaint meets the plausibility standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (citations omitted).  It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

#### B.    RCFC 52.1

RCFC 52.1 provides for judgment on the administrative record.  To review a motion brought under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The court must make fact findings where necessary.  *Id.*  The resolution of a motion filed under RCFC 52.1(c) is akin to an expedited trial on the paper record. *Id.*

#### C.    Review of Decisions of Military Records Correction Boards

The court does not review the issue before a board for correction of military records *de novo*; rather, this court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). Plaintiff's burden is to show by "'cogent and clearly convincing evidence'" that the decision of the board fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). Plaintiff must also overcome the presumption of regularity which attaches to the actions of the board. *See, e.g.*, *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011) ("We . . . presume that the Correction Board performed its function according to the regulations . . . .") (citations omitted); *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the United States (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001))); *Armstrong v. United States*, 205 Ct. Cl. 754, 762-63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary) (citations omitted).

Although many formulations of the arbitrary and capricious standard of review exist, when the standard is applied to military pay cases in this circuit, the court is largely concerned with whether the correction board's decision is procedurally fair and supported by substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1156 & n.12 (Fed. Cir. 1983) (citation omitted). The correction board's decision must also be sufficiently detailed for the court to ascertain the reasoning behind the denial of relief to the applicant. *See Buchanan v. United States*, 621 F.2d 373, 383 (Ct. Cl. 1980) ("The burden that would be placed upon plaintiff in this court would be almost impossible if the correction board were permitted . . . to cast aside the issues without discussion or reason and merely state that insufficient evidence has been presented to indicate probable injustice or material error."). The court must additionally consider whether the correction board has failed to correct "plain legal error." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citations omitted).

The court also considers whether an injustice has occurred, because "'when a correction board fails to correct an injustice clearly presented in the record before

it, it is acting in violation of its mandate.'" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)).  In cases of clear injustice, the board has a moral duty to "'take steps to grant thorough and fitting relief.'" *Id.* (quoting *Caddington v. United States*, 178 F. Supp. 604, 607 (Ct. Cl. 1959)).  When a board does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court.  *Yee*, 512 F.2d at 1387 (citing *Skaradowski v. United States*, 471 F.2d 627 (Ct. Cl. 1973) and *Duhon v. United States*, 461 F.2d 1278 (Ct. Cl. 1972)).

## II.     Analysis

### A.     Dr. Keller's Request for Promotion Fails to State a Claim

Defendant argues that this court "should dismiss Dr. Keller's request for promotion through the ranks, from Lieutenant Colonel to the rank of General, because it fails to state a claim upon which relief can be granted."[6]  Def.'s Mot. at 9.  The court must agree with defendant that this court lacks the authority to order one of the service branches to promote one of its members.  *See id.* at 11 (stating that "this Court cannot order the Air Force to promote one of its members" (citing *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed. Cir. 2000))); *see also, e.g.*, *Lewis v. United States*, 458 F.3d 1372, 1378 & n.7 (Fed. Cir. 2006) (citing cases for the proposition that a court cannot order the promotion of a military officer); *Adkins v. United States*, 68 F.3d 1317, 1324 (Fed. Cir. 1995) (characterizing a military pay plaintiff's request that "the Court of Federal Claims direct the Secretary to promote him" as impermissible and improper).  Defendant notes that plaintiff has not contested the authorities which forbid this court from ordering military promotions.  Def.'s Reply at 2.  Because plaintiff's request that this court order the Air Force to promote him fails to state a claim upon which relief may be granted, the court grants defendant's motion to dismiss brought under RCFC 12(b)(6).

### B.     Judgment on the Administrative Record for Defendant

---

[6]/ Defendant does not challenge plaintiff's other legal claims under RCFC 12(b)(6), as long as those claims are considered to be distinct from the improper request that this court order Dr. Keller's promotion up through the ranks.  Def.'s Mot. at 11; Def.'s Reply at 2-3.

### 1.   Threshold Issue of Waiver or Concession

Defendant correctly notes that plaintiff did not present argument on two of his legal claims in his motion for judgment on the administrative record, despite the fact that the government's opening brief presented a rebuttal of each of the five principal legal claims in the complaint.  Def.'s Reply at 7-9.  The government therefore argues that plaintiff has conceded the validity of the government's arguments regarding these two claims.  *Id.* at 7 (citing *Finch v. Hughes Aircraft Corp.*, 926 F.2d 1574, 1576-77 (Fed. Cir. 1991); *Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), *aff'd*, 44 F.3d 1008 (11th Cir. 1995); *So. Nev. Shell Dealers Ass'n v. Shell Oil Co.*, 725 F. Supp. 1104, 1109 (D. Nev. 1989) (*Southern Nevada Shell Dealers*)), 9.  These authorities do not adequately support the government's "implicit concession" theory, which, as it so happens, was not addressed by plaintiff in his reply brief.

The *Finch* decision discusses waiver of issues on appeal when a litigant has failed to raise such issues before the trial court.  926 F.2d at 1576-77.  *Finch* is thus inapposite to the procedural posture of this case.  The other two decisions cited by defendant, *Brewer*, 816 F. Supp. at 1579, and *Southern Nevada Shell Dealers*, 725 F. Supp. at 1109, discuss implicit concessions or burdens of proof in the context of a party resisting summary judgment – that procedural posture is unlike the situation in this case, where cross-motions for judgment on the administrative record are before the court.  *See, e.g.*, *Bannum*, 404 F.3d at 1355 (explaining the difference between judgment on the administrative record and summary judgment).  Thus, defendant has mustered no authority, and the court is aware of none, that a party resisting judgment on the administrative record concedes the validity of an opponents' arguments if those arguments go unanswered.

There might be a place for a doctrine of implicit concession or waiver in the context of judgment on the administrative record, but the court sees no need to articulate such a doctrine in this case.  Indeed, in at least one military pay case, this court resisted the government's invitation to find that the plaintiff waived arguments in the context of cross-motions for judgment on the administrative record.  *Lopez-Velazquez v. United States*, 85 Fed. Cl. 114, 132 n.21 (2008).  Defendant's implicit concession theory is similarly unpersuasive here.  As one district court decision has stated, judicial recognition of an implicit concession is a

"draconian option." *Prince v. Rice*, 570 F. Supp. 2d 123, 132 (D.D.C. 2008) ("[Defendant] asks the Court to treat its unrebutted arguments in favor of summary judgment as effectively conceded.  The Court declines to exercise that draconian option, however, because summary judgment is warranted without the need to resort to implicit concessions.").  For these reasons, the court declines to hold that Dr. Keller has conceded the validity of any of the government's arguments for judgment on the administrative record.

Instead, the court holds plaintiff to the rather rigorous standard applicable in challenges to the decisions of military records correction boards.  *See supra*.  As relevant precedent makes clear, this court does not sit as "'a super correction board.'"  *Lopez-Velazquez*, 85 Fed. Cl. at 133 (quoting *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)).  Dr. Keller, to prevail in this suit, must show by cogent and clearly convincing evidence that the third and final AFBCMR decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See, e.g.*, *Chambers*, 417 F.3d at 1227; *Wronke*, 787 F.2d at 1576.  Accordingly, failure to respond to the government's arguments for judgment on the administrative record may equate to a failure to meet plaintiff's burden of proof on the errors alleged in his complaint.

## 2.    The AFBCMR's Ruling that the SSBs Were Properly Constituted Survives Review

For this claim, the question before the court is whether the AFBCMR failed to correct plain legal error when it approved the constitution of the 1998 and 2000 SSBs, which were composed of the same officers and which were held on Nov. 16-17, 2006.[7]  Pl.'s Mot. at 11; Def.'s Mot. at 14-15; AR at 641-42, 648, 690-91. Plaintiff, in various pleadings, alleges that this practice violated a prohibition on SSB members serving on two "successive" boards, as that term is either used or implicated in the following statutes and regulations:  10 U.S.C. § 612(b) (2012); 10 U.S.C. § 14102(d) (2012); Air Force Instruction (AFI) 36-2406; and, AFI 36-2501 (17 July 2004).  *See* Compl. ¶ 51; Pl.'s Mot. at 10-12; Pl.'s Reply at 1.  The government, on the other hand, states that none of the authorities cited by plaintiff

---

[7]/ Plaintiff asserts that the 1998 and 2000 SSBs were held on the same day.  Pl.'s Mot. at 11 (citing AR at 690).  This assertion is not supported by the evidence of record, or, for that matter, by plaintiff's complaint.  *See* AR at 641, 648, 660-61; Compl. ¶ 35.

have been violated by the constitution of the 1998 and 2000 SSBs.  Def.'s Mot. at
13-17; Def.'s Reply at 3-6.

The court will consider each of the authorities referenced by plaintiff in his
complaint or his briefing of the parties' cross-motions for judgment on the
administrative record.  As discussed below, plaintiff has failed to show that any of
these statutory or regulatory provisions have been violated.  For this reason,
plaintiff has not shown that the AFBCMR failed to correct clear legal error in the
constitution of the SSBs.

### a.      Section 612(b)

The relevant portion of 10 U.S.C. § 612(b) states that "[n]o officer may be a
member of two successive selection boards."  The AFBCMR considered Dr.
Keller's argument that the 1998 and 2000 SSBs violated this provision, and
commented that

> [w]hile Counsel [for Dr. Keller] disputes the membership
> of the [1998] and [2000] SSBs and argues they violated
> the intent of [10 U.S.C. § 612(b)], as they constituted
> "successive" boards, we are not persuaded by counsel's
> arguments and note the comments of [the Air Force
> specialist] indicating it is not uncommon and entirely
> proper and consistent with Title 10 for an officer's record
> to be considered in alternate years during the same
> session of SSBs using the same board members.  We
> accept their view and find no basis to conclude the
> applicant did not receive fair and equitable consideration
> by these contested boards.  Therefore, in the absence of
> evidence the applicant was treated differently than others
> similarly situated and that a clear violation of policy or
> statute has occurred, we find no basis to question the
> membership of the contested SSBs.

AR at 652.

Defendant, relying extensively on the records of the AFBCMR proceedings

13

and the advisory opinions provided by Air Force specialists therein, has offered ample justification for the Air Force's interpretation of section 612(b).  *See* Def.'s Mot. at 15-16 (citing AR at 690, 694-98).  Plaintiff did not attempt to interpret, or even reference, section 612(b) in any of the arguments presented in his opening brief or his reply brief.  On this record, the court finds that plaintiff has not met his burden to show any violation of 10 U.S.C. § 612(b) or any clear error of law that the AFBCMR should have corrected.

### b.    Section 14102(d)

The relevant portion of 10 U.S.C. § 14102(d) states that "[n]o officer may be a member of two successive promotion boards."  The court notes that this language mirrors that of section 612(b), and that section 14102(d), unlike section 612(b), specifically describes rules applicable to SSBs for reserve officers on active status. *Compare* 10 U.S.C. § 612(b) (which is part of a chapter titled "Promotion, Separation, and Involuntary Retirement of Officers on the Active-Duty List"), *with* 10 U.S.C. § 14102(d) (which is included in a part titled "Promotion and Retention of Officers on the Reserve Active-Status List").   Although Dr. Keller only raised section 612(b) as a relevant statute in his application before the AFBCMR, *see* AR at 659; Compl. ¶¶ 45, 51, the court considers the Board's interpretation of the term "two successive selection boards" in section 612(b) to be fully applicable to the term "two successive promotion boards" in section 14102(d).  *See* Def.'s Mot. at 17 (describing section 14102(d) as a "corresponding implementing statute").

Plaintiff argues that the composition of the 1998 and 2000 SSBs violated section 14102(d).  After quoting the statutory text, plaintiff appropriately frames the inquiry for this court:

> The issue for this Court, then, becomes whether the composition of [the same five officers for] SSBs for two nonconsecutive years . . . constitutes a violation of the statute prohibiting officers from serving on "successive" boards.

Pl.'s Mot. at 11.  The only argument that plaintiff presents which relies on section 14102(d) is that the 1998 and 2000 SSBs, when they twice considered Dr. Keller's records on November 16-17, 2006, could not have preserved essential notions of

14

anonymity and impartiality that should be provided in the SSB process.[8]  *Id.* at
11-12.  In plaintiff's words, "[t]he statute . . . simply cannot be read to impose such
prejudicial effect upon members being considered by multiple SSBs."  *Id.* at 12.

Defendant, on the other hand, notes that section 14102(d) uses the terms
consecutive and successive interchangeably.  Def.'s Mot. at 17.  The title of section
14102(d) is "Prohibition of Service on Consecutive Promotion Boards," whereas
the body of this section expresses a ban on service on "two successive promotion
boards."  Thus, in defendant's view, the text of the statute fully supports the Air
Force's interpretation of the ban as pertaining to service on two *consecutive year*
SSBs, not two SSBs that are scheduled to meet one after the other.  *See* AR at 695
("Ascribing to the term 'successive' the plain meaning that it refers to *consecutive*
year boards, it is clear that no members [of the 1998 and 2000 SSBs] served on
successive board[s].").

The court agrees with defendant that although section 14102(d) would have
barred identical composition of the 1998 and 1999 SSBs, a circumstance which did
not occur in this case, it contains no prohibition on the composition of SSBs for
non-consecutive years.  Plaintiff's contention regarding the "prejudicial effect" of
having the same SSB composition for two non-consecutive year SSBs may have
some interest from a policy standpoint, but there is nothing in the text of the statute
itself to support plaintiff's interpretation of section 14102(d).  For this reason, the
court finds that plaintiff has not met his burden to show any violation of 10 U.S.C.
§ 14102(d) or any clear error of law that the AFBCMR should have corrected.

### c.  AFI 36-2501

Plaintiff has also referenced two specific provisions of AFI 36-2501.[9]  First,
plaintiff relies on AFI 36-2501 ¶ 2.3.4, Compl. ¶ 51; Pl.'s Mot. at 11; Pl.'s Reply at
1, which states that

---

[8]/ Plaintiff also relies on AFI 36-2501 for this particular argument.  The court discusses
regulatory provisions separately, *see infra*.

[9]/ In his complaint, plaintiff refers vaguely to violations of both AFI 36-2501 and AFI
36-2406, without citing particular paragraphs in these regulations.  Compl. ¶ 51.  The court
discusses plaintiff's allegation generally referencing these two regulations in the following sub-
section of this opinion.

> [a]n officer cannot serve as a member of two successive
> boards considering officers of the same competitive
> category (except for SSBs when the second board is not
> considering the same officer or officers).

AFI 36-2501 ¶ 2.3.4.  The court notes that this regulation contains the same prohibition as the one found in sections 612(b) and 14102(d), *i.e.*, an officer cannot serve on two successive SSBs which are considering a particular officer's service records.  The AFBCMR concluded that the identical composition of the 1998 and 2000 SSBs considering Dr. Keller's records was not "a clear violation of policy or statute."  AR at 652.

Plaintiff argues that the composition of the 1998 and 2000 SSBs could not have preserved essential notions of anonymity and impartiality, and that AFI 36-2501 "cannot be read to impose such prejudicial effect upon members being considered by multiple SSBs."  Pl.'s Mot. at 12.  In support of this contention, plaintiff relies on another provision of AFI 36-2501 which indicates that some measure of anonymity should be preserved in the SSB process.  *Id.* at 11 (citing AFI 36-2501 ¶ 6.8.3).  This provision instructs officers to address letters to SSBs without using the words "Special Selection Board" and to send such letters undated.  AFI 36-2501 ¶ 6.8.3.  In plaintiff's view, "[a] clear, common sense reason for anonymity in the process is to ensure impartiality and protect the officer from prejudice and unfairness."  Pl.'s Mot. at 11-12.  For this reason, plaintiff argues that AFI 36-2501 was violated by the composition of the 1998 and 2000 SSBs.

Defendant vigorously opposes plaintiff's interpretation of AFI 36-2501. First, defendant notes that since the 1980s the Air Force has interpreted the term "successive boards" to mean consecutive year boards.  Def.'s Mot. at 15-16 (citing AR at 690, 695).  Second, the government argues that deference is owed to the Air Force's interpretation of its own regulation unless the interpretation is inconsistent with the regulation or erroneous.  *Id.* at 16 (citing cases).  Third, defendant observes that the anonymity provision referenced by Dr. Keller is found in instructions for correspondence with SSBs, not in the section governing the conduct of SSBs.  Def.'s Reply at 5-6.  Defendant notes in this regard that anonymity is not guaranteed or always attainable in the SSB process, especially in certain smaller competitive categories.  *Id.* at 6.

16

Having considered the parties' arguments and the referenced portions of AFI 36-2501, the court must agree with defendant that the Air Force's interpretation of that regulation is not clearly erroneous. Although plaintiff has speculated as to the possible prejudicial effect of having two identical SSBs consider Dr. Keller's records for 1998 and 2000, plaintiff has not identified any violation of the terms of AFI 36-2501. For this reason, the court finds that plaintiff has not met his burden to demonstrate any violation of AFI 36-2501 or any clear error of law that the AFBCMR should have corrected.

### d.      AFI 36-2406

Other than a vague allusion in the complaint, plaintiff makes no reference to AFI 36-2406. In that document, plaintiff cryptically asserts that the composition of the 1998 and 2000 SSBs "violated AFI 36-2406 and [AFI] 36-2501 which require the immediate removal of the PRF from the OSR after the CSB and prohibits the inclusion of previously considered PRFs in the OSR." Compl. ¶ 51. Once this alphabet soup has been interpreted with the aid of definitions provided earlier in the complaint and some conjecture, it appears that plaintiff alleges these two SSBs, composed of the same members and meeting on November 16-17, 2006, would necessarily have neglected to remove Promotion Recommendation Forms from the Officer Selection Record before the first board (for 1998), and would have included the previously considered Promotion Recommendation Forms in the Officer Selection Record considered by the second board (for 2000). Plaintiff has not specified, in any of his pleadings, how these hypothetical occurrences violate either AFI 36-2406 or AFI 36-2501.

Defendant dismisses this legal claim as mere speculation that is unsupported by any evidence in the record. Def.'s Mot. at 17. Furthermore, defendant argues that the SSBs benefit from a presumption of regularity. *Id.* (citing *Brenner v. United States*, 202 Ct. Cl. 678, 692 (1973)). Plaintiff did not attempt to rebut defendant's arguments. The court therefore finds that plaintiff has not met his burden to show any violation of AFI 36-2406 or AFI 36-2501 because of 1998 SSB Promotion Recommendation Forms that might have been included in the 2000 SSB Officer Selection Record, or to demonstrate any clear error of law that the AFBCMR should have corrected.

### 3.      The AFBCMR's Ruling that the Records Before the SSBs

### Were Proper Survives Review

Plaintiff's remaining claims regarding the third AFBCMR decision may be characterized as challenges to the propriety of the records considered by the 1998, 1999, and 2000 SSBs.  These challenges, which are similar in nature, were presented to the AFBCMR in December of 2009, AR at 661-65, and are restated in the complaint before this court, Compl. ¶¶ 47-50.  In his motion for judgment on the administrative record, plaintiff asserts that "[t]he SSBs were not presented with substantially complete records which fairly portrayed Plaintiff's record."  Pl.'s Mot. at 12.  For this reason, plaintiff argues that the third AFBCMR decision was "arbitrary, capricious, and otherwise not in accordance with the law."  *Id.* at 10.

The court notes that although plaintiff's claims in this regard are largely based on alleged procedural defects in the promotion and continuation decision-making process, plaintiff has also raised a question of fairness.  Compl. ¶¶ 47, 49-50; Pl.'s Mot. at 12-13.  For this reason, although the court is primarily concerned with the question of whether the contents of the records before the SSBs were lawful, *see Dodson*, 988 F.2d at 1204 (noting that this court reviews the decision of a military records correction board for failure to correct clear legal error), it must also determine whether the AFBCMR failed to redress a clear injustice, *see Yee*, 512 F.2d at 1387.  The court now turns to a discussion of the four remaining claims in the complaint.

### a.    Incomplete and Negative Officer Selection Records

The most general of plaintiff's claims is that his Officer Selection Records (OSRs) painted an incomplete and inappropriately negative picture of his service in the Air Force.  Compl. ¶ 47; Pl.'s Mot. at 12-13.  The court reproduces here the entirety of plaintiff's argument regarding this claim:

> The OSRs do not sufficiently account for the fact that Dr. Keller missed opportunities due to his erroneous discharge.  Dr. Keller argued before the AFBCMR that there was no evidence that he would not have completed Air Command and Staff College if [he] had the opportunity or that he would not have become a rated flight surgeon if he had the opportunity.  AR 704.  The

18

> Board found these assertions to be "highly speculative"
> but it is more speculative that Dr. Keller would have
> made no career advancements during the years
> considered by the SSBs.  And, as argued by Dr. Keller
> before the AFBCMR, the OSRs erroneously suggest that
> he was assigned to a [sic] temporary, non-clinical, strictly
> clerical "project officer" duties for five years despite the
> fact that his supervised privileges had been restored.  AR
> 112, 664, 693, 701.  These omissions and inaccuracies
> amount to prejudice and unfairness.  Blank entries are
> inherently prejudicial because they suggest, through no
> fault of the officer, that the officer's career was entirely
> stagnant and he made no effort for career advancement.
> The misleading Assignment Status information is
> similarly prejudicial and unfair because it inaccurately
> reflects that Dr. Keller worked in a lesser, non-medical
> role for five years despite the fact that his supervised
> privileges had been restored.

Pl.'s Mot. at 13.  Thus, in plaintiff's view, an injustice occurred by forever freezing Dr. Keller's service records into a negative portrayal of his stripped-of-clinical-privileges phase of service, and by failing to ameliorate that image with potential but, in reality, unearned career advancement milestones.

The AFBCMR disagreed with plaintiff's position on this issue, and relied on its own experience and on commentary from specialists in the Air Force.  One specialist commented that:

> the applicant . . . [complains about] his professional files
> not indicating he was granted full and unrestricted
> practice privileges in his medical specialties[, including
> Family Medicine and Aerospace Medicine (clinical
> privileges which he hoped to obtain within the Air
> Force),] as well as his active staff appointments,
> specifically any time after 9 October 1997. . . .
> Documentation available does not support the applicant's
> request.  The provider credentials file does not

> demonstrate Doctor Keller held clinical privileges in
> Family Medicine or Aerospace Medicine.  He held
> privileges as an OB/Gyn physician.  Recommend the
> Board deny the request as it would not be appropriate to
> amend the record to state Doctor Keller held clinical
> privileges in Family Medicine or Aerospace Medicine
> when he was not granted clinical privileges in those
> specialties within the Air Force.

AR at 693.  Another specialist commented that "any subsequent approval of supervised privileges in no way invalidated the accuracy of [prior personnel documents] or required some other type of 'clarification' or explanation be placed in the record." *Id.* at 696-97.  Further, the specialist commented that "[t]he fact that circumstances may have subsequently changed does not retroactively invalidate [prior personnel documents], nor do the changed circumstances necessarily need to be reflected elsewhere in the record." *Id.* at 697.  Finally, the specialist noted that it was Dr. Keller's substandard performance that was prejudicial, not his service records:  "the behavior described is 'prejudicial' – not because its inclusion [in Dr. Keller's records] was improper or in error, but because it accurately memorializes the applicant's substandard performance of duty." *Id.*

The AFBCMR relied on these perspectives to find that no error of law occurred in the compilation and content of Dr. Keller's Officer Selection Records. *See* AR at 653 (stating that the Board agreed with the Air Force specialists that the records before the SSBs were "correctly constructed based on the applicant's underlying military records"); 654 (stating that "the Board has always held the view that [Dr. Keller's] records appropriately reflect that he was a marginal performer while he was on active duty and it was this substandard performance which has led to the outcome he contests").  As to the enhancements Dr. Keller proposed to his actual accomplishments in the Air Force, the Board concluded that these were "extraordinarily speculative, and speculation is no basis for us to recommend fabricating an [Officer Selection Brief], or recommending other changes to the record, which have no basis in fact." *Id.* at 653.  As to plaintiff's contention that an injustice occurred, the AFBCMR disagreed:

> Counsel [for Dr. Keller] argues that it is impossible for
> the applicant to receive full and fair consideration for

20

promotion or continuation by SSB because the
applicant's erroneous 1997 discharge makes it impossible
to constitute an accurate, fair and comprehensive officer
selection record (OSR) due to the fact that he was
erroneously discharged.  We disagree.  The merits of the
established promotion process outweigh his arguments
and should be given priority in our determination of what
is full and fitting relief.  We note that this is in keeping
with the Board's actions in previous cases of this type
and have found that numerous officers who have voids in
their records have successfully competed for promotion
through the SSB process.  Furthermore, we note the
applicant was offered an opportunity to request
reinstatement to active duty, but instead elected
continuation and further SSB consideration.  Thus it
appears his actions contributed greatly to the predicament
[in which] he now finds himself and is the primary reason
he has not received the performance reports and clinical
assessments he indicates are so critical to him receiving
full and fair consideration for promotion/continuation.

*Id.* at 654.

The court observes that constructive service may be of limited benefit when
service-members are later considered for promotion by SSBs.  *E.g.*, *Tippett v.
United States*, 98 Fed. Cl. 171, 182 n.15, 184-85 (2011); *Hoskins v. United States*,
61 Fed. Cl. 209, 222 (2004).  It does not follow, however, that a service-member
who obtains constructive service from a corrections board has been the victim of
injustice merely because the government has not provided, in addition to relief in
the form of constructive service, fabricated supplementary service records to make
that service-member's records appear to be more competitive for promotion or
continuation.  *See, e.g.*, *Tippett*, 98 Fed. Cl. at 182 n.15, 184-85 (finding no failure
to correct clear injustice when fictional records were not created to outweigh years
of constructive service); *Hoskins*, 61 Fed. Cl. at 222 ("The court cannot order the
Air Force to fabricate hypothetical [personnel] evaluations.").  Furthermore, it is
important to note that this court's task is to review the actions of the AFBCMR, not
to sit as a super-corrections board so as to fashion novel promotion processes.  *See,*

*e.g.*, *Hoskins*, 61 Fed. Cl. at 222 (stating that "it is not within the competence of this court to devise a mechanism for retroactive promotions that would be an improvement over the policy and procedures used by the Air Force" (citing *Yee*, 512 F.2d at 1388)).

Defendant argues that to prevent injustice the Air Force was simply required to "'properly explain' any gaps or inconsistencies" in Dr. Keller's records, and that the Air Force met this standard. Def.'s Mot. at 23 (quoting *Roth*, 378 F.3d at 1392). Plaintiff did not respond to this argument, which the court finds to be persuasive in this instance. Having reviewed the record and the parties' arguments, the court finds that plaintiff has failed to identify an injustice or a clear error of law that the AFBCMR failed to correct in Dr. Keller's Officer Selection Records.

### b. Improperly-Worded Air Force (AF) Forms 77

In the complaint, plaintiff argues that Dr. Keller's OSRs considered by the SSBs "contained an AF Form 77 that violated Air Force regulations and the AFBCMR erred in concluding the violation was harmless error." Compl. ¶ 48. Plaintiff's cryptic reference in the complaint to an objectionable AF Form 77 and violations of unidentified Air Force regulations is unsupported by argument in either his moving or his reply brief. Defendant contends that the alleged violation of regulation is, at most, harmless error, and that the AFBCMR's finding in this regard is proper. Def.'s Mot. at 19-20. The court relies, as it must in this instance, on the discussion of this issue in the administrative record and in defendant's motion to determine whether plaintiff's allegation of error has merit.

In plaintiff's petition before the AFBCMR, plaintiff alleged that the AF Forms 77, which documented unrated periods in his OSR, contained incorrect wording to explain the absence of records for certain periods of constructive service. AR at 643.2, 662-63. There is no dispute that the wording on these forms was indeed incorrect, although it is not clear which regulation or regulations might be implicated. *Compare* AR at 646 (citing AFI 36-2402 and AFI 36-2406), *with id.* at 653 (citing AFI 36-2406), *and id.* at 662 (citing AFI 36-2608 (1 July 1996) ¶ 2.24.5), *and id.* at 663 (citing AFI 36-2406 (15 April 2005) ¶ 3.4.1), *and id.* at 687 (citing AFI 36-2406). The court adopts defendant's unrebutted contention that it is AFI 36-2402 ¶ 6.2 which provides the proper language for an AF Form 77: "Not rated for the above period. Report is not available for administrative

reasons."  Def.'s Mot. at 19.

Dr. Keller's OSR included AF Forms 77 which included, instead, this wording:  "No report available for the period [X] through [Y].  No report required according to AFI 36-2402."  AR at 316.  The AFBCMR found that

> the noted [wording] error was harmless and the evidence is insufficient to conclude that the error had a material impact on the applicant's consideration for promotion.  In this respect, we note the comments of [the Air Force specialist] indicating that while the wording used was not the exact wording prescribed in AFI 36-2406, it did not change the meaning or content of the AF Forms 77.

*Id.* at 653.  Defendant argues that the purpose of AF Form 77 is to prevent gaps in a service record from prejudicing the candidate for promotion, and that the variance in wording here was correctly deemed by the AFBCMR to be harmless.  Def.'s Mot. at 19-20.

Plaintiff has not articulated to this court a response to defendant's argument regarding the AF Forms 77.  Before the AFBCMR, Dr. Keller asserted that it was the Air Force's burden to show that the wording error in these forms was harmless.  AR at 651.  No authority was cited for this burden-shifting argument.  *Id.*  Precedent establishes that in this court it is plaintiff's burden to show "'material administrative error'" in the SSB process.  *Richey v. United States*, 322 F.3d 1317, 1324 (Fed. Cir. 2003) (quoting 10 U.S.C. § 628(g)(2)(C) (2012)); *see also* 10 U.S.C. § 14502(h)(2) (2012) (supplying a similar standard for the review of the actions of SSBs considering reserve officers for promotion); *Roth*, 378 F.3d at 1394 n.14 (citing *Richey*, 322 F.3d at 1324-25, for the proposition that "[s]ection 628(g)(2) . . . codifies [the] standard of review" to be applied to the findings of a corrections board that has reviewed the actions of an SSB).  Dr. Keller has not met that burden of proof here.  On this record, the court finds that plaintiff has not established that the AF Form 77 wording error was material or that the AFBCMR's finding of harmless error was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### c.   Incomplete and Inaccurate Officer Selection Briefs

**(OSBs)**

Plaintiff asserts in the complaint that his Officer Selection Records "contained an Officer Selection Brief that was incomplete, inaccurate, and materially unfair. The AFBCMR erred in concluding that the OSB was constructed in a way that was not unfair or prejudicial." Compl. ¶ 49. This legal claim is comprised of two parts: (1) the OSBs contain blanks where there should be evidence of accomplishments, even if these accomplishments were never achieved in reality; (2) Dr. Keller's last assignment in the Air Force, in a non-clinical position, taints the post-1997 years of constructive service which are described in the OSBs. Pl.'s Mot. at 12-13. As discussed *supra*, the Air Force was not obliged to invent accomplishments to improve Dr. Keller's service records. The question before the court, then, is whether the Officer Selection Briefs violated Air Force regulations or relevant statutes, were inaccurate, or perpetrated an injustice.

The AFBCMR found, relying on the opinion of Air Force specialists, that Dr. Keller's OSBs, and his OSRs in general, were properly constructed. AR at 653-54. Plaintiff disagrees, but as defendant notes, plaintiff has not cited a single statute or regulation that has been violated by his OSBs. Def.'s Reply at 8. Thus, plaintiff has not shown that the Air Force, the SSBs, or the AFBCMR violated any statutes or regulations in connection with Dr. Keller's OSBs.

Plaintiff contends that his OSBs were inaccurate because they do not reflect the fact that his clinical privileges were ordered to be restored. *See* Pl.'s Mot. at 13 ("The misleading Assignment Status information is . . . prejudicial and unfair because it inaccurately reflects that Dr. Keller worked in a lesser, non-medical role for five years despite the fact that his supervised privileges had been restored."). The AFBCMR rejected all of Dr. Keller's requests for changes to his service records that would have somehow altered the documented facts of his last assignment in the Air Force. *See* AR at 653 (stating that "speculation is no basis for us to recommend fabricating an OSB, or recommending other changes to the record which have no basis in fact"). An Air Force specialist reviewed Dr. Keller's OSBs and commented that the "[c]urrent duty information" therein was correctly updated based on his personnel records. *Id.* at 689. The specialist also noted that blanks in an OSB "should not be construed as unfair or prejudicial." *Id.* On this record, the court finds that the AFBCMR's conclusion that Dr. Keller's OSBs were

accurate is not arbitrary or capricious.

Finally, the court considers whether Dr. Keller's OSBs were unfair and thus perpetrated an injustice. Plaintiff cites *Weiss v. United States*, 408 F.2d 416 (Ct. Cl. 1969), for the proposition that "[t]he documents which are sent to a Se[le]ction Board for its consideration . . . must be substantially complete, and must fairly portray the officer's record," *id.* at 419. Plaintiff also cites *Porter v. United States*, 163 F.3d 1304 (Fed. Cir. l998), which holds that prejudicial information in the records before an SSB must, in some cases, be mitigated by other relevant information so as to provide "a substantially complete and fair record," *id.* at 1311-12 (citing *Sanders v. United States*, 594 F.2d 804, 814 (Ct. Cl. 1979); *Weiss*, 408 F.2d at 419). Defendant cites *Roth* for the proposition that when constructive service records are created, the Air Force's obligation is to "recreate the record, and explain gaps therein, within the discretion of the service, and in a way that is not prejudicial to the member." Def.'s Mot. at 23 (citing *Roth*, 378 F.3d at 1392). All of these authorities are of value in determining whether or not the OSBs in Dr. Keller's records before the SSBs were unfair.

Although it is unfortunate that Dr. Keller's actual active duty service with the Air Force ended before his supervised clinical privileges were restored and utilized in another duty assignment, those are the realities reflected in his personnel records and in his OSBs. On the record before the court, it has not been shown that Dr. Keller's OSBs unfairly represented his actual active duty service or his constructive service.[10] Further, the record does not show that Dr. Keller's OSBs

---

[10]/ Although the parties do not discuss the 1998, 1999 and 2000 SSBs in any detail, Dr. Keller could have sent a letter to each of these SSBs providing his perspective on his service records, and was notified of his right to do so in the 2004 AFBCMR decision granting him recourse to SSBs. *See* AR at 609-11 (discussing letters from Dr. Keller to the 1996 and 1997 SSBs as prerequisites for consideration for promotion), 705 n.2 ("Dr. Keller was free to address matters relevant to the original [promotion] board [by letter].") (internal quotations and citation omitted). Indeed, the 2004 AFBCMR decision specifically addressed the issue of Dr. Keller's successful appeal of the revocation of his supervised clinical privileges, and suggested to Dr. Keller that his letters to the 1996 and 1997 SSBs could address this topic and others. *Id.* at 611. Plaintiff has asserted before this court that although he did send letters to various SSBs, he did not submit documentation of the successful appeal of the revocation of his supervised clinical privileges. *See* Pl.'s Mot. of October 13, 2009, at 24; Pl.'s Reply of February 19, 2010, at 7. In the court's view, Dr. Keller had a fair opportunity to supplement and explain his service records

continue...

contained prejudicial material that should have been mitigated by the inclusion of equally relevant, but missing, information.  Because there is nothing in the record to show that the AFBCMR failed to redress clear injustice in Dr. Keller's OSBs, its decision in this regard survives review.

### d.    Inaccurate, Improper and Unfair Promotion Recommendation Forms

Plaintiff's final allegation of error concerns the Promotion Recommendation Forms (PRFs) contained in the Officer Selection Records before the SSBs.  According to the complaint,

> The OSR contained PRFs that were incomplete, inaccurate, and unfairly portrayed Plaintiff's record.  In violation of AFI 36-2406, para. 8.1.4.1.16, the PRFs for the [1998, 1999 and 2000 SSBs] were not prepared by authorized raters.

Compl. ¶ 50.  This legal claim thus is comprised of two parts:  (1) an alleged procedural violation of regulation as to the preparers of the PRFs; (2) a more general allegation that the PRFs were inaccurate and unfair.  The court will address each of these issues in turn.

The court notes several deficiencies in the unauthorized rater claim briefly mentioned in the complaint (and in support of which no argument was presented in either plaintiff's opening or reply brief).  First, plaintiff fails to explain the nature of the regulatory violation, and fails to the provide the text of AFI 36-2406 ¶ 8.1.4.1.16, a paragraph which no longer exists in the current version of the regulation.  Nor does plaintiff provide a citation reference to the version of AFI 36-2406 which should apply to the 1998, 1999 and 2000 SSBs held in 2006 and 2007.  It is plaintiff's burden to show a violation of AFI 36-2406, however neither his complaint nor his briefing satisfies that burden.

It is possible, however, to reconstruct plaintiff's allegation of error by

---

[10]...continue
that were considered by the 1998, 1999 and 2000 SSBs.

consulting plaintiff's (superseded) first amended complaint, so as to inquire into the nature of his claim.  In that document, plaintiff stated that AFI 36-2406 (1 July 2000) was violated because "'¶ 8.1.4.1.16 mandates [that] 'the senior rater of record at the time eligibility is established will write the PRF.'"  First Am. Compl. ¶ 48 (emphasis removed).  Apparently plaintiff believed, at least at one time, that the authors of Dr. Keller's PRFs before the SSBs were unauthorized raters because his constructive service was fundamentally incompatible with one of the requirements for assigning, in the first instance, a "duly authorized senior rater" for the purposes of obtaining PRFs.  *Id.* ¶¶ 47-52.  In that superseded complaint, plaintiff alluded to a vicious perpetuating cycle of invalid PRFs produced by unauthorized raters, considered by a multitude of future SSBs, a cycle that could only be broken by promotion directly by the AFBCMR.  *Id.* ¶¶ 56, 64.

When Dr. Keller presented this argument to the AFBCMR, AR at 661-62, Air Force specialists disagreed with plaintiff's assertion that his PRFs were authored by unauthorized raters.  One specialist noted that it was difficult to even address this claim because Dr. Keller had failed to allege and specify how the PDFs violated AFI 36-2406.  *Id.* at 695.  The specialist also opined that a different regulation applied to the 1998 and 1999 SSBs, not the one cited by plaintiff.  *See id.* at 696 (citing AFI 36-2402 (1 July 1996) as applicable to the 1998 and 1999 SSBs, and AFI 36-2406 (1 July 2000) as applicable to the 2000 SSB).  In any case, that specialist concluded that no violation of regulation occurred, as did another specialist who explained that the senior rater for each promotion cycle was indeed the appropriate senior rater at Grand Forks for 1998, 1999 and 2000.  *Id.* at 686-87, 696.  On this record, the court finds no violation of regulation by the inclusion of the aforementioned PRFs in the OSRs before the 1998, 1999 and 2000 SSBs.

As to inaccuracies or unfairness in the PRFs before these SSBs, this allegation also fails.  After considering Dr. Keller's arguments regarding the raters assigned to produce the PRFs for his constructive service, the AFBCMR concluded that "it was reasonable to have the PRFs prepared by the officers selected."  AR at 653.  Although Dr. Keller speculated that he might not have continued at Grand Forks, the Board found that

> [t]here is no basis to conclude the PRFs rendered were
> not a fair assessment of the applicant's potential to serve
> in the higher grade.  While Counsel [for Dr. Keller]

27

> provides copies of email traffic indicating that command
> officials intended to reassign the applicant to another
> installation prior to the matter under review, he concedes
> that one can only speculate as to where the applicant
> would have ended up had he remained on active duty.

*Id.*

Plaintiff, by failing to substantiate his allegation of error regarding these PRFs, has not met his burden to show that these PRFs, or the consideration of these PRFs by the SSBs, presented a clear injustice which the Board failed to correct. The court finds, on this record, that the AFBCMR did not fail to correct injustice or inaccurate records when it did not invalidate the PRFs included in Dr. Keller's OSRs before the SSBs. Having reviewed all of plaintiff's allegations of error in light of the administrative record, the court finds no reason to disturb the third and final decision of the AFBCMR.

## CONCLUSION

Because plaintiff's request that this court order the Air Force to promote him fails to state a claim upon which relief may be granted, the court grants defendant's motion to dismiss brought under RCFC 12(b)(6). Furthermore, because Dr. Keller has not shown by cogent and clearly convincing evidence that the AFBCMR decision challenged in the complaint was arbitrary, capricious, contrary to law, or unsupported by substantial evidence, defendant's motion for judgment on the administrative record is granted, and plaintiff's motion for judgment on the administrative record is denied. Accordingly, it is hereby **ORDERED** that:

(1)   Defendant's Renewed Motion to Dismiss and Motion for Judgment upon the Administrative Record, filed December 12, 2012, is **GRANTED**;

(2)   Plaintiff's Motion for Judgment on the Administrative Record, filed May 2, 2013, is **DENIED**;

(3)   The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the Second Amended Complaint with

prejudice; and

(4)     No costs.

/s/ Lynn J. Bush        
LYNN J. BUSH
Senior Judge